**Gary HAYNES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 27A05–9102–CR–32.**

Court of Appeals of Indiana,
Fifth District.

Sept. 16, 1991.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BARTEAU, Judge.

Gary Haynes appeals his convictions following a jury trial for dealing in cocaine of 3 grams or more and conspiracy to deal in cocaine of 3 grams or more, both class A felonies. Because we reverse, we need only address the issue whether the trial court erred by admitting evidence of extrinsic offenses.

### FACTS

The only evidence to support Haynes' convictions came through the testimony of Roger Boothby, who was arrested after selling cocaine to a police informant in a controlled-buy situation. The police informant, Kevin Bullard, made arrangements to purchase cocaine from Boothby at Boothby's home. When Bullard arrived at Boothby's home, wired so the police could hear what was going on, Boothby was not there. Boothby arrived a few minutes later and explained to Bullard that he had gone to pay for the cocaine, but had to wait for a phone call to pick up the cocaine. Bullard testified that Boothby said he was getting the cocaine from someone named "Gary" but Bullard did not know who "Gary" was.

After waiting for an hour and an half to two hours, Boothby received a phone call and left the house. Bullard stayed at Boothby's house and part of the police surveillance team followed Boothby. Boothby drove to a store and bought a gallon of milk and then drove to the home of Keith Holmes. Boothby was in Holmes' house for ten to fifteen minutes and then drove straight back to his own home. When Boothby returned home, he gave Bullard an "8–ball" (approximately 3.2 grams) of cocaine in exchange for $275.00. Bullard then left and met with the police officers at a predetermined place.

The police obtained and simultaneously executed search warrants for the homes of Boothby and Holmes. Boothby was arrest-

ed at his home, and at Holmes' home the police arrested Keith Holmes, his wife Danell, and Gary Haynes, Danell's brother. The searches of neither Holmes' nor Boothby's houses revealed any cocaine, but the police did find drug paraphernalia and a small amount of marijuana in Holmes' house. Boothby told police officers that he got the cocaine he sold to Bullard from Haynes.

At trial, Boothby testified that he had made arrangements with Haynes earlier in the evening, at Haynes' parents' house, to buy the cocaine for $275.00 and that he had given Haynes the money at that time. Haynes told Boothby, according to Boothby, that he would have to get the cocaine through his brother-in-law. Boothby further testified that Haynes called him later that evening and told Boothby to meet him at Keith Holmes' house. Boothby said he knew Haynes casually and vaguely knew the Holmes.

Haynes' version is somewhat different. He testified that he was at Holmes' house that night helping his sister and brother-in-law with some painting and clean-up work. Boothby, who he knew casually from doing some roofing jobs, showed up at Holmes' house to ask Haynes for some help on some roofing jobs. Haynes did not know how Boothby found him at Holmes' house and had not talked to him earlier in evening. Haynes denied that he had conspired to and did sell cocaine to Boothby or anyone else that evening.

On direct examination, Boothby was asked if he had ever purchased cocaine from Haynes before. Haynes objected and the State argued that the testimony was being offered to prove Haynes' knowledge and intent. The trial judge overruled the objection and Boothby was allowed to testify that he had bought cocaine from Haynes more than three times before. Boothby did not testify as to when the prior sales had been.

## DISCUSSION

Haynes argues that the trial judge erroneously allowed Boothby to testify about extrinsic offenses and that such testimony was so prejudicial that a new trial is required. The State counters that the evidence was properly admissible to show a common scheme or plan by Haynes and Boothby to deal cocaine.

The general rule is that evidence that a defendant committed a crime with which he has not been charged, an extrinsic offense, is inadmissible if "its sole relevance is to show that the defendant's general character is bad and that he therefore has a tendency to commit crimes." *Street v. State* (1991), Ind.App., 567 N.E.2d 1180, 1183, *trans. denied* (quoting *Penley v. State* (1987), Ind., 506 N.E.2d 806). In *Street* we had the opportunity to thoroughly examine the extrinsic offense rule and the development of the exceptions. We will not repeat that examination here, but restate the conclusion that

> evidence of extrinsic offense[s] is admissible only if it "promotes a legitimate inference about some issue," *Penley, supra,* and such inference tends to prove the defendant's state of mind, identity as the perpetrator of a signature crime, or formulation of a preconceived plan. Unless the extrinsic evidence is probative of some element of the charged crime, its admission should be seen as raising the forbidden inference of "an accused's propensity to commit crime or ... guilt of the charged crime." *Malone [v. State* (1982), Ind., 441 N.E.2d 1339] ...

*Street, supra* at 1185. As in *Street,* the case before us today compels us to decide that the extrinsic offense testimony was erroneously admitted and was not harmless error.

*Street* is on all fours with the fundamental facts of the case before us here. As in *Street,* the dispute here was not whether Haynes dealt cocaine knowingly and intentionally, but whether he dealt cocaine at all. Therefore, to admit the extrinsic offense testimony to prove his state of mind regarding knowledge and intent, as argued by the State, was to admit evidence on a point not at issue. Similarly, the evidence could not properly be admitted to prove identity because that was not at issue either.

We are left with whether the evidence was properly admissible to prove a preconceived plan. In drug cases, it appears that a preconceived plan can be shown through evidence of prior drug dealing as long as there is proximity in time. *See Clark v. State* (1989), Ind., 536 N.E.2d 493; *see also Street, supra; but cf. United States v. Beasley* (7th Cir.1987), 809 F.2d 1273 (requiring more than repetition and temporal proximity). The record before us is totally devoid of any evidence as to when the extrinsic offenses occurred. Boothby testified that Haynes had sold him cocaine at least three times in the past, but the State did not establish any kind of temporal proximity to the cocaine sale with which Haynes was charged. Thus, the State did not show enough to have the extrinsic offenses testimony properly admitted as evidence of a preconceived plan.

Having determined that the evidence was erroneously admitted, we must examine whether the error is harmless.

[I]f one cannot say, with fair assurance, ... that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is, rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Miller v. State* (1982), Ind., 436 N.E.2d 1113 (emphasis and citation omitted).

We cannot say with fair assurance that the verdict was not substantially swayed by the error. Here, as in *Street*, the extrinsic offense witness was not a police officer or informant operating under police supervision. The witness was himself a cocaine dealer and the actual target of the controlled buy leading to Haynes' arrest. The extrinsic offenses to which Boothby testified were not carried out subject to the scrutiny of the police. His credibility stood to be bolstered by evidence that he had bought cocaine from Haynes before. *See Lenover v. State* (1990), Ind.App., 550 N.E.2d 1328, *reh'g denied* (prejudice compounded where only one witness testifies to extrinsic offense).

The jury had to believe Boothby to convict Haynes. As we stated in *Street*, "[a]lthough we cannot say that the jury would have disbelieved [Boothby] absent the extrinsic offense testimony, we are certain that the testimony enhanced his version of events and made conviction more likely. At a minimum, we strongly doubt that admission of the testimony did not substantially influence the result." *Street, supra* at 1188.

Accordingly, Haynes' conviction is reversed and this cause is remanded for a new trial.

REVERSED AND REMANDED.

SHARPNACK and ROBERTSON, JJ., concur.