Harry SCHUMPERT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–9205–CR–171.

Court of Appeals of Indiana,
Fourth District.

Nov. 30, 1992.

Susan W. Brooks, McClure, McClure & Kammen, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Defendant–Appellant Harry Schumpert appeals his convictions for one count of robbery, a class B felony (IND.CODE 35–42–5–1), and two counts of confinement, class B felonies (IC 35–42–3–3).

We affirm.

Schumpert raises the following restated issues:

1. whether the trial court committed reversible error in admitting evidence of extrinsic offenses;

2. whether the trial court committed reversible error in admitting hearsay evidence;

3. whether the evidence was insufficient to establish the *corpus delecti* of the offenses for which he was charged and convicted; and

4. whether the trial court erred in dismissing without prejudice the habitual offender count filed against him.

On August 3, 1989, Ora Statzer, an employee of Goodwill Industries, observed a car parked next door to the Goodwill store. Statzer became suspicious and asked Chuck Wilson, the store manager, to write down the license plate number of the car. Wilson wrote down a description of the car and the license plate number.

Schumpert, who had been sitting in the car, entered the store at closing time, selected merchandise, and approached the sales counter. He grabbed Statzer by the neck, thrust a gun covered by a brown paper bag into her back, and forced her to give him the money from the cash register. He then ushered Statzer, Wilson, and a third employee into an office in the rear of the store where he ordered Wilson to open

the safe. Wilson complied and gave him the money contained in the safe. Schumpert then locked all three employees in the office and fled with approximately $1,100.00.

After viewing a video tape of a line-up, Wilson and Statzer identified Schumpert as the person who robbed the Goodwill Store. The third employee was unable to make an identification. Schumpert was convicted in a jury trial of robbery and three counts of confinement. The trial court later merged one count of confinement with the robbery conviction.

At trial, the court allowed the State, over Schumpert's objection, to present eight witnesses to testify concerning five uncharged robberies. Schumpert contends the trial court committed reversible error in allowing admission of evidence regarding these extrinsic offenses.

■ Evidence of extrinsic offenses is generally inadmissible to prove commission of the present crime. *Clark v. State* (1989), Ind., 536 N.E.2d 493, 494. It is inadmissible because " 'its sole relevance is to show that the defendant's general character is bad and that he therefore has a tendency to commit crimes.' " *Penley v. State* (1987), Ind., 506 N.E.2d 806, 808 (*quoting Schnee v. State* (1970), 254 Ind. 661, 662, 262 N.E.2d 186, 187). *See also Street v. State* (1991), Ind.App., 567 N.E.2d 1180, *trans. denied.*

■ However, evidence of extrinsic offenses may be admissible when "it promotes a legitimate inference about some issue in the cause, notwithstanding its incidental revelation about the defendant's character." *Penley, supra.* In this regard, Indiana case law is consistent with Rule 404(b) of the Federal Rules of Evidence, which reads:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes,

such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.[1]

■ Indiana has recognized an exception to the general rule called "common scheme or plan." *Clark,* 536 N.E.2d at 493. The exception permits "proof of a prior offense committed with an identical *modus operandi* when the identity of the perpetrator is in genuine issue." *Id.* This exception applies when there is a "strong showing that the different criminal actions were so similarly conducted that the method of conduct can be considered akin to the accused's signature." *Penley, supra,* 506 N.E.2d at 809. However, "[T]he repeated commission of similar crimes is not enough to qualify for the exception to the general rule. The acts or methods employed must be so similar, unusual and distinctive as to earmark them as the acts of the accused." *Id.* (*quoting Willis v. State* (1978), 268 Ind. 269, 272, 374 N.E.2d 520, 522).

In the present case, the trial court allowed testimony indicating a man, identified by witnesses as Schumpert, robbed Indianapolis thrift stores on July 29, August 3 (the present offense), August 13, August 18, and August 26 of 1989. In each of the robberies a man entered the store at closing time, brought merchandise to the counter, demanded money from the cashier while exhibiting a brown paper bag covering a gun in his hand, and locked store employees in back rooms. The court also allowed testimony indicating Schumpert robbed a thrift store on August 28, 1989. In this robbery he entered the store at closing time, exhibited a gun with a brown paper bag over it, and ordered the employees to go to the back of the building.

N.E.2d 1334, 1336 (Ind.1992).

1. Fed.R.Evid. 404(b) was expressly adopted by our supreme court in *Lannan v. State,* 600

The first of two questions relevant to this issue is whether there is a genuine issue of identity. With regard to this question, one commentator has noted:

Admissibility of such evidence [of extrinsic offenses] is within the trial court's discretion, and the evidence of other crimes should not be admitted if its potential for unfair prejudice outweighs its probative value. If the defendant admits his or her presence at the crime scene, the probative value of the evidence is lessened. Indiana cases also contain language suggesting that if the criminal actor's identity is sufficiently established by other evidence, the trial court's discretion should be exercised against admission, but no case has so held. (Footnotes omitted).

12 R. Miller, *Indiana Evidence* § 404.214 (1984).

The case referred to by Judge Miller in the last sentence of the quoted material is *Washington v. State* (1981), Ind., 422 N.E.2d 1218. In *Washington,* the manager and an employee of a fast food restaurant identified the defendant at trial as the person who had robbed the restaurant. The manager identified the defendant at trial even though he was unable to identify him from a photo lineup prior to trial. The defendant's partner during the crime also testified for the State. Over the defendant's objection, the trial court allowed an employee of another restaurant to testify, for purposes of identification, regarding the defendant's involvement in a robbery of that restaurant. Our supreme court held the testimony on the extrinsic offense was admissible because "the identity of the robber in the instant crime was not so firmly established by the testimony of the two eyewitnesses as to make this additional identification testimony unnecessary." 422 N.E.2d at 1220.

The present case is similar to *Washington* in that the witnesses were confronted for a short period of time by a gun-wielding man whom they had never seen before. Two of the witnesses were able to identify the man from a photo array and at trial; one was not able to identify him at all. Under the reasoning set out in *Washington,* the question of identity was a genuine issue in the present case.

The second question under this issue is whether Schumpert's *modus operandi* was so distinct as to create a "signature". Obviously, the factors of waiting until the thrift store's closing time, bringing merchandise to the counter, and taking employees to the back room (to either access the safe or to allow more time for escape), are not sufficient, standing alone, to establish a signature. However, the repetition of the distinctive factor of the defendant approaching the victims with a brown bag over a gun held in his hand in each of the crimes, coupled with the repetition of the less distinctive factors common to each of the crimes, is "so similar, unusual and distinctive as to earmark the [crimes] as the acts of the accused."

We hold the trial court did not err in admitting the evidence of the extrinsic offenses in the present case. We would be remiss, however, if we did not emphasize that a trial court, in conducting a pretrial hearing on this type of evidence, must give sufficient attention to the common factors and the reasons for proposed admission to allow it to properly weigh the probative value of the evidence to prove identity against the possible prejudice to the defendant. The existence of a common scheme or a distinctive *modus operandi* relevant to one of the exceptions listed in our case law and Fed.R.Evid. 404(b) does not justify admission of extrinsic offenses evidence when the admission of such evidence results in a conviction based upon the character of the defendant.

Schumpert contends the trial court erred in improperly allowing evidence to be introduced in violation of *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482.[2]

2. On September 26, 1991, our supreme court handed down *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, in which it overruled *Patterson.* However, in *Modesitt* the court expressly indi-cated its ruling was not to apply retroactively. The trial in the present case was held in November, 1990. Thus, *Modesitt* does not apply.

Schumpert points to the following specific evidence:

1) Deputy Jeff Stagg testified as to what Charles Wilson told him, which resulted in the introduction of an automobile registration. Charles Wilson had not testified at the time.

2) Deputy Jeff Stagg testified as to what Ora Lee Statzer told him, resulting in ... testimony concerning the alleged gun. Ora Lee Statzer had not testified at that time.

3) Detective Wilbur Atwell testified as to what Mary Hamilton told him. Although Mrs. Hamilton had testified previously, she did not acknowledge making any statements to Detective Atwell.

4) Detective Wilbur Atwell testified as to what Deputy Stagg had told him. Although Deputy Stagg had testified previously, he did not acknowledge making any statements to Detective Atwell. (References to the Record omitted).

Brief of Appellant at 19–20.

The rationale for the *Patterson* rule is "that truthfulness is safeguarded by having the declarant available for cross examination as to the out-of-court statements." *Modesitt, supra,* 578 N.E.2d at 651. Schumpert relies on language in *Modesitt* which indicates "by putting into evidence the victim's out-of-court charges against [a defendant] by three separate and distinctive witnesses *prior to* calling the victim herself, the prosecutor effectively precluded [the defendant] from effective cross-examination of these charges." (Emphasis in original). *Id.* However, Schumpert fails to note the error in admission was rendered reversible in *Modesitt* because of the "drumbeat repetition of the victim's original story...." *Id.* at 652.

■ Assuming, without deciding, that the trial court erred in allowing Detective Stagg to testify regarding what Charles Wilson and Ora Lee Statzer stated to him (contentions 1 and 2 above), we find no reversible error. Detective Stagg's testimony on these statements was extremely brief and was consistent with Wilson and Statzer's later testimony. Both Wilson and Statzer were cross-examined at length about their observations. Schumpert was not unduly prejudiced by Detective Stagg's testimony.[3]

■ Under *Patterson,* a declarant must either acknowledge making the prior out-of-court statement, *Lambert v. State* (1989), Ind., 534 N.E.2d 235, 236, or testify consistently with the out-of-court statement and be subject to cross-examination. *DeMotte v. State* (1990), Ind.App., 555 N.E.2d 1336, 1339, *reh. denied, trans. denied.* In the present case, Mrs. Hamilton gave testimony consistent with that of Detective Atwell's testimony. Accordingly, the trial court did not err in allowing Detective Atwell's testimony about his discussion with Mrs. Hamilton (contention 3 above).

■ With reference to Detective Atwell's testimony about Deputy Stagg's prior statement (contention 4 above), we find Deputy Stagg neither acknowledged making the prior out-of-court statement nor testified consistently therewith. Accordingly, the trial court erred in admitting Detective Atwell's testimony regarding the statement. However, we find Schumpert was not prejudiced by this error since Detective Atwell testified only that Detective Stagg allegedly told him no fingerprints were found at the crime scene.

■ Schumpert contends the enhancements of his convictions due to possession of a handgun were improper because there was no independent evidence to establish the *corpus delecti* of such possession. He points out none of the employees saw a gun. Thus, he reasons Statzer and Wilson's testimony was based upon his claim that he had a gun in the brown sack. In support of his contention, Schumpert cites *Clark v. State* (1987), Ind.App., 512 N.E.2d 223, and similar cases, wherein we held independent evidence apart from the defendant's extra-judicial admission must be introduced at trial to avoid the risk of convicting someone of a crime which never occurred.

---

**3.** The erroneous admission of evidence must be disregarded on appeal unless it affects the substantial rights of the parties. *Harwood v. State* (1991), Ind., 582 N.E.2d 359, 360.

██ A conviction for armed robbery may be sustained even though the gun or other deadly weapon was not revealed during the robbery. *Buchanan v. State* (1986), Ind.App., 490 N.E.2d 351, 354 (*citing Kruckeberg v. State* (1978), 268 Ind. 643, 377 N.E.2d 1351, *cert. denied*, 439 U.S. 990, 99 S.Ct. 590, 58 L.Ed.2d 665; *Sewell v. State* (1982), Ind.App., 442 N.E.2d 1142). The *corpus delecti* may be established by circumstantial evidence. *Clark*, 512 N.E.2d at 227.

In *Buchanan*, the defendant presented a note to a bank teller stating "Do as I say, I have a gun...." 490 N.E.2d at 354. During the defendant's guilty plea hearing, the defendant described the gun which was in his pocket at the time of the robbery. Also placed in evidence was the bank teller's statement that "the defendant, in fact, did have a gun." *Id.* at 355. In upholding the post-conviction court's finding that a sufficient factual basis was made for the guilty plea, we held "[s]ince the trial court's decision is supported by Buchanan's statements and admissions and other evidence in the Record, we cannot say the trial court erred as a matter of law." *Id.*

In the present case, none of the witnesses ever actually saw a gun in the brown paper sack. However, witness Statzer testified she felt the gun when it was thrust into her back during the exchange of cash at the sales counter and the walk to the back of the store. The feel of the gun in a witness' back is much more indicative of the presence of a gun than the observation of a bulge in the pocket in *Buchanan*. The trier of fact could reasonably have inferred Schumpert was armed during the commission of the robbery.

██ During the sentencing hearing on the felony counts, the State reminded the court of its request at the end of the trial that the habitual offender count be dismissed because the State failed to secure the necessary evidence to prove habitual offender status. The State then asked the court to dismiss the case without prejudice for the record. The court granted the State's request. Schumpert objected to the court's dismissal at the sentencing hearing

and now contends the count should have been dismissed with prejudice.

IC 35–50–2–8(a) permits the State to seek to have a person sentenced as an habitual offender. In order to support a finding of habitual offender status, the State must show "[a]fter a person has been convicted and sentenced for a felony committed after sentencing for a prior unrelated felony conviction, the person has accumulated two (2) prior unrelated felony convictions." IC 35–50–2–8(b). Subsection (c) states that "[i]f the person was convicted of the felony in a jury trial, the jury shall reconvene for the sentencing hearing."

Our supreme court has acknowledged the statute mandates that the same jury which decided the defendant's guilt must initially decide the habitual offender question. *State v. McMillan* (1980), 274 Ind. 167, 409 N.E.2d 612, 617. However, the court has authorized the impanelling of a new jury to hear the habitual offender phase when necessity requires it. *See, Carter v. State* (1987), Ind., 505 N.E.2d 798 (new jury to determine habitual offender status because of congestion of the court's calendar); *Kalady v. State* (1984), Ind., 462 N.E.2d 1299 (new jury necessary after delay for review of presentence investigation because of knowledge gained from exposure to publicity); *Funk v. State* (1981), Ind., 427 N.E.2d 1081 (new jury necessitated by mistrial); *McMillan, supra* (new jury necessary because first jury could not reach a decision on habitual offender status). There is no Indiana case discussing the appropriateness of reconvening the original jury or impanelling a new jury to decide habitual offender status after a delay caused by the State's request for dismissal.

However, in the present case, the habitual offender count against Schumpert was dismissed and he is not now subject to having to defend himself. Thus, there is no actual controversy requiring review. An appeal or issue becomes moot when the principal question in issue ceases to be a matter of real controversy. *Sowers v. La-*

*porte Superior Court, No. II* (1991), Ind. App., 577 N.E.2d 250, 251 n. 1.

Affirmed.

MILLER, J., and RATLIFF, Senior Judge, concur.