Julius JAMES, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 20A04–9209–CR–326.

Court of Appeals of Indiana, Fourth District.

Oct. 28, 1993.

Thomas A. Murto, Goshen, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Defendant–Appellant Julius James appeals his conviction for Possession of Marijuana, a class D felony. IND.CODE 35–48–4–11.[1] James also contends the trial court erred in revoking his probation from a prior conviction.

We affirm in part and reverse in part.

James raises the following restated issues for our review:

1. whether he was denied his right to speedy trial under Criminal Rule 4(B);

2. whether the stop of the vehicle he was driving was improper;

3. whether he was denied a fair trial because of references by State witnesses to his prior drug related activities, conviction, and probation status; and

4. whether his probation violation was supported by sufficient evidence.

During the early morning hours of February 15, 1992, Sergeant Edward Windbigler, of the Elkhart Police Department, was on patrol. Officer Windbigler noticed James enter a vehicle and turn onto an Elkhart road. Officer Windbigler also entered the road and drove behind James. While he was following James' vehicle, the vehicle exceeded the posted speed limit by fifteen miles per hour. The vehicle also turned left without James using his turn signal. Officer Windbigler activated his red lights and stopped James' vehicle. Officer Swygart, also in the area, stopped as well.

Officer Windbigler approached James' vehicle on the driver's side and asked James for his license and vehicle registration. Officer Swygart approached on the passenger side. As James reached into the glove compartment for the registration, Officer Swygart noticed a rolled cigarette in the ashtray of the vehicle and yelled "ashtray" to Officer Windbigler. Officer Windbigler shined his flashlight into the car and saw James attempt to shut the ashtray. The officer, however, was able to view a marijuana-like cigarette in the ashtray.

Officer Windbigler asked James to step from the car. The detective retrieved the suspected marijuana cigarette and examined it. He then arrested James for possession of marijuana.

James was charged with possession of marijuana and possession of cocaine from this incident. After a trial, the jury found him not guilty of possession of cocaine and guilty of possession of marijuana.[2]

James first contends he should have been discharged because he was not afforded a trial within the 70 day period designated in

---

**1.** IC 35–48–4–11 provides:

A person who:
(1) knowingly or intentionally possesses (pure or adulterated) marijuana, hash oil, or hashish;

. . . . .

commits possession of marijuana, hash oil, or hashish, a Class A misdemeanor. However,

the offense is a Class D felony ... (ii) if the person has a prior conviction of an offense involving marijuana, hash oil, or hashish.
James does not dispute that he has a prior conviction for possession of marijuana.

**2.** The jury did not believe the State's contention that the cigarette contained traces of cocaine.

Ind.Crim. Rule 4(B)(1). In pertinent part, the rule states:

If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar....

James filed a "Motion for Early Trial" on March 4, 1992. Trial was subsequently scheduled for May 14, 1992, a date one day outside the 70 day speedy trial period. James did not object to the setting of the trial date outside the 70 day period.

■ A movant for an early trial must "maintain a position which is reasonably consistent with the request that he has made." *Wilburn v. State* (1982), Ind., 442 N.E.2d 1098, 1103 (*citing Rutledge v. State* (1981), Ind., 426 N.E.2d 638, 640). When a movant for an early trial on a date within the 70 day period has trial set for a date outside the limit and he does not then object to the setting of such date, "he has abandoned his request and the motion ceases to have legal validity." *Id.*

James notes the trial was not held on the scheduled date of May 14, 1992, but on May 28, 1992. He cites *State v. Washington Circuit Court* (1987), Ind., 514 N.E.2d 838, for the proposition that acquiescence outside the early trial period only waives rights up to and including the original date set outside the 70 day period.

We find *Washington* does not apply in the present case. *Washington* pertains to waiver of a trial date outside the one year period stated in Crim.R. 4(C). It does not apply to a case arising under Crim.R. 4(B) wherein acquiescence constitutes a complete abandonment of the early trial motion.

James contends the trial court erred in not granting his motion to suppress the evidence garnered from the search of the vehicle he was driving. He argues the stop of his vehicle was in violation of IC 9–30–2–2, which provides:

A law enforcement officer may not arrest or issue a traffic information and summons to a person for a violation of an Indiana law regulating the use and operation of a motor vehicle on an Indiana highway or an ordinance of a city or town regulating the use and operation of a motor vehicle on an Indiana highway unless at the time of the arrest the officer is:

(1) wearing a distinctive uniform and a badge of authority;  or

(2) operating a motor vehicle that is clearly marked as a police vehicle;

that will clearly show the officer or the officer's vehicle to casual observations to be an officer or a police vehicle. This section does not apply to an officer making an arrest when there is a uniformed officer present at the time of the arrest.

He further argues that if the reason for the stop of the vehicle was truly based upon his traffic violations, then Officer Windbigler, who was in plainclothes and an unmarked car at the time of the stop, should have summoned a uniformed officer or an officer operating a marked police vehicle to assist him in the stop. He cites *State v. Whitney* (1978), 176 Ind.App. 615, 377 N.E.2d 652, in support of his argument.

In *Whitney,* an off-duty state policeman who was not in uniform or in a marked police vehicle stopped a motorist for an alleged traffic violation. When the motorist exited his car, he noticed the officer's vehicle had personal license plates. The officer, who the motorist thought was a drunk impersonating an officer, approached and told the motorist he was under arrest. An argument ensued and the officer pulled out a gun which the motorist recognized was not a standard police weapon. The officer eventually obtained the motorist's license, and refused to return it. The officer and the motorist agreed to fight over possession of the license, but while the motorist was removing his coat the officer hit him in the back of the head

with his pistol. The officer eventually shot the motorist in the groin during a subsequent struggle. The State appealed an award of damages to the motorist for false arrest, false imprisonment, and personal injury. This court ruled the damages for false arrest were appropriate because under the predecessor statute to IC 9–30–2–2, the officer was forbidden to effect the arrest. In so ruling, the court held an arrest had occurred because the officer took the motorist's license in order to restrict the motorist's movement.

██ IC 35–33–1–5 defines the term "arrest" as "the taking of a person into custody, that he may be held to answer for a crime." Here, Officer Windbigler stopped the vehicle to investigate James' erratic driving. Although the stop of a vehicle is a detention, and thus an arrest in a technical sense, it is not a "taking of a person into custody." It would arguably have been better if Officer Windbigler called for the assistance of a uniformed police officer in making the stop; however, the stop itself was not an arrest as defined in IC 35–33–1–5 and used in IC 9–30–2–2. Thus, the trial court did not err in denying the motion to suppress on the basis that the stop violated IC 9–30–2–2.

James contends the trial court erred in allowing the deputy prosecutor and State witnesses to continuously refer to 1) his prior encounters with police officers, 2) his former imprisonment on a drug conviction, and 3) his status as a probationer. James argues the cumulative effect of these continuous references deprived him of a fair trial.[3]

██ Evidence of other crimes, wrongs, or acts "is generally inadmissible to prove commission of the present crime." *Clark v. State* (1989), Ind., 536 N.E.2d 493, 494; *Schumpert v. State* (1992), Ind.App., 603 N.E.2d 1359, 1361. It is inadmissible because "'its sole relevance is to show that the defendant's general character is bad

and that he therefore has a tendency to commit crimes.'" *Penley v. State* (1987), Ind., 506 N.E.2d 806, 808 (*quoting Schnee v. State* (1970), 254 Ind. 661, 662, 262 N.E.2d 186, 187). *See also Schumpert, supra.* As Judge Barteau noted in *Street v. State* (1991), Ind.App., 567 N.E.2d 1180, *trans. denied:*

> The general rule addresses concern that a jury will convict solely on an inference of bad character flowing from evidence of the defendant's extrinsic offense, which would violate our jurisprudential tenet against punishing defendants for what they are, rather than what they did. Two additional reasons support a bar against admission of extrinsic offense evidence: (1) to relieve a defendant of the need to respond to unexpected accusations, and (2) to decrease the chances that a jury will become confused by collateral issues or have its attention diverted from the charged crimes. (Citations omitted).

567 N.E.2d at 1184.

Recently, in *Hardin v. State* (1993), Ind., 611 N.E.2d 123, our supreme court stated the reasons for the rule:

> The rationale for this rule is predicated upon our fundamental precept that every defendant should only be required to defend against the specific charges filed. In instances where evidence of prior uncharged misconduct is admitted at trial, a defendant would be forced to refute these allegations as well as defend against the crime specifically charged. If a court were to indiscriminately admit proof of criminal activity beyond that specifically charged, then the burden on the defense would be intolerably enlarged and the court would effectively negate the due process presumption of innocence that our system of justice accords to every accused. See *Malone v.*

---

**3.** James' trial counsel submitted a motion *in limine* which addressed, among other things, possible references to James' prior acts and probation status. (R. 38–40). The trial court denied the motion with reference to such acts and status. However, at a meeting held during trial, but outside the hearing of the jury, the trial court recognized a continuing objection to any references to the prior acts and probationary status. (R. 216–222).

*State* (1982), Ind., 441 N.E.2d 1339, 1345–1346.

611 N.E.2d at 128.

■ However, evidence of other crimes, wrongs, or acts may be admissible when "it promotes a legitimate inference about some issue in the cause, not withstanding its incidental revelation about the defendant's character." *Penley, supra; Schumpert, supra.* In this regard, Indiana case law is consistent with Rule 404(b) of the Federal Rules of Evidence, which reads:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.[4]

■ Admission of evidence under one of the exceptions to Fed.R.Evid. 404(b) is inappropriate if the danger of unfair prejudice to the defendant substantially outweighs the probative value of the evidence. *Hardin, supra; Warner v. State* (1991), Ind., 579 N.E.2d 1307, 1310 (*citing Hansford v. State* (1986), Ind., 490 N.E.2d 1083). This requirement is expressed in Fed.R.Evid. 403, which states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[5]

In the present case, the State argues the evidence of James' prior conviction, drug use, and current probationary status was admissible to prove both James' knowledge of drugs and his intent to possess such drugs. This argument was considered, and rejected, by the Nebraska supreme court in *State v. Coca* (1983), 216 Neb. 76, 341 N.W.2d 606. In *Coca*, the trial court ruled evidence of prior drug-related actions was admissible to prove the elements of knowledge and intent in the defendant's trial for possession of marijuana found behind the seat of the defendant's automobile. The Nebraska appellate court first noted admission of evidence was within the trial court's discretion and knowledge and intent were elements of the charged crime of possession. It held, however, that it could not infer from defendant's intention to possess marijuana on a previous date that he intended to possess marijuana at a later time. The court also held the defendant's involvement in prior drug activity did not make it more likely that he knew the marijuana was behind the seat of the vehicle in the case before the court. In so holding, the court pointed out the central question was "whether Coca knew the marijuana was in the car, not whether he knew what marijuana was." 341 N.W.2d at 610. The court concluded by observing the jury was asked to infer from the evidence "that since Coca was involved with marijuana previously, he criminally possessed it at a later time." 341 N.W.2d at 611. The court held "[e]vidence of a prior crime cannot be used for such a purpose." *Id.* Accordingly, it reversed Coca's conviction.

In *Haynes v. State* (1991), Ind.App., 578 N.E.2d 369, this court also considered, and rejected, an argument similar to the one made in the present case. In *Haynes*, the defendant was charged with dealing in cocaine of 3 grams or more and conspiracy to deal in cocaine of 3 grams or more. The trial court admitted, over objection, evidence of prior drug transactions between the defendant and the State's chief witness. The evidence of the prior acts was offered to prove knowledge and intent. This court held "the dispute here was not whether

---

**4.** Fed.R.Evid. 404(b) was expressly adopted by our supreme court in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, 1336.

**5.** Fed.R.Evid. 403 was expressly adopted by our supreme court in *Hardin, supra,* 611 N.E.2d at 128–129.

Haynes dealt cocaine knowingly and intentionally, but whether he dealt cocaine at all." 578 N.E.2d at 370. Thus, we held "to admit the extrinsic offense testimony to prove his state of mind regarding knowledge and intent ... was to admit evidence of a point not in issue." *Id.*

■ *Haynes* is applicable to the present case. We also find the reasoning of *Coca* to be persuasive, and we conclude its holding is also applicable. In so doing, we note James' prior drug activity and probationary status is only relevant to the present crime under the impermissible presumption that because James once committed a similar crime he must have necessarily committed the present crime.[6] Absent this presumption, evidence of James' prior drug activity and probationary status has no relevance to whether he intended to possess the marijuana in the present case. Also absent this presumption, James' knowledge of what marijuana was is not relevant to the issue of whether he knew the marijuana was in his sister's car. Additionally, the issues of knowledge and intent were not issues of genuine dispute. Accordingly, we hold the trial court could not have admitted evidence of James' prior acts under the knowledge or intent exceptions of Fed.R.Evid. 404(b). Furthermore, James' prior activity was not admissible for any of the other purposes listed in the rule or our case law.

The State contends the trial court's admission of evidence of prior acts in the present case is proper under the reasoning of *Haynes v. State* (1980), Ind.App., 411 N.E.2d 659. Specifically, the State argues "[t]his rule permitting evidence of extrinsic crimes to establish an element has also been applied to drug activity." Brief of Appellee at 11.

In *Haynes*, the appellant raised the issue of whether the trial court erred in allowing a question on cross-examination which assumed the police had found marijuana in his possession on a prior occasion. This court ruled the question was proper because Haynes' trial counsel had tried to mislead the jury into thinking a prior stop and subsequent treatment by the police was one instance of many, including the case under consideration, where the police harassed him for no reason. We held trial counsel's attempt to mislead the jury "opened the door" for a full explanation of the prior stop and subsequent treatment on cross-examination. 411 N.E.2d at 664–665. We also found other evidence regarding prior acts was properly admitted because the prior acts were part of the *res gestae* of the charged act. *Id.* at 666.

*Haynes* is not applicable here. The evidence admitted against James was not part of the *res gestae* of the charged offense and was not necessary to explain misleading testimony or evidence offered by James' counsel.

The State suggests the trial court's error in admitting evidence of prior bad acts was rendered harmless by the trial court's giving of an instruction warning the jury not to consider the evidence as "any evidence of the defendant's guilt of the crimes charged in this case." (R.630). In support of its position, the State cites *Duncanson v. State* (1987), Ind., 509 N.E.2d 182, and similar cases, for the proposition that instructions are presumed to have a curative effect.

---

6. Stated differently, we hold the evidence should have been excluded, "not because the jury would be unwarranted in giving it weight [for the impermissible purpose of propensity], but rather because the jury would be less likely to consider the remaining evidence." ROBERT L. MILLER, INDIANA EVIDENCE, § 404.201 at 253 (1984). Accordingly,

The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice. *Michelson v. United States* (1948), 335 U.S. 469, 475–476, 69 S.Ct. 213, 218–219, 93 L.Ed. 168.

▮ In determining whether the admission of improper evidence warrants reversal, "we must assess the probable impact of the evidence upon the jury." *Thompson v. State* (1993), Ind.App., 612 N.E.2d 1094, 1097, *reh. denied.* (*quoting Lannan, supra,* 600 N.E.2d at 1341). Evidence of prior or uncharged crimes may have a major impact on the jury. *Lannan,* 600 N.E.2d at 1341.[7]

The allusions to James' prior acts, conviction, and probation status were numerous. In his case in chief, the deputy prosecutor elicited testimony designed to make the jury aware of James' prior acts and probation status. On cross-examination the deputy prosecutor repeatedly asked questions of three witnesses as to how many times James had been convicted. Even more inappropriate, however, was the deputy prosecutor's thinly veiled attempt during final argument to draw the jury's attention to James' prior conviction and probation status instead of the less dramatic, but arguably sufficient, facts of the present case. In final argument, the deputy prosecutor stated:

> Let's examine a few things about this case. This case obviously involves Julius James and the charges that have been filed against him that he possessed cocaine and marijuana. Let's look exactly who is Julius James [sic]? I think that's important. Who is this guy? Well, let's examine what we know about him. We know that he told Sgt. Windbigler that he's been busted before for possession of marijuana. We know that. Has anybody come forward to say it's not true? ... [Objection overruled] ... What else do we know about Mr. James? Well, we know he has been in prison. His girlfriend is not sure how many times. We know that he has had, he has been on probation. We know that he has had a proceeding because it was alleged that

his probation was violated. We know from Mr. James' girlfriend's testimony that he has done drugs in the past. Nobody has told you anything otherwise. So what do we know about Mr. James? (R.556–559).

▮ The steady drumbeat of the deputy prosecutor's references to James' prior conviction, bad acts, and probation status repeatedly reminded the jury that James was a person of bad character. We cannot say these constant references, which made up the main thrust of the deputy prosecutor's case, were erased from the jury's mind by an instruction which advised the jury not to draw the very conclusion which the evidence and the closing argument was designed to elicit. This is especially true since the evidence could not come in under any of the exceptions found in Fed.R.Evid. 404(b). The effect of the trial court's admission of such evidence and the overruling of objections to the deputy prosecutor's inappropriate statements was to overpersuade the jury that James had a bad general record and to deny James a "fair opportunity to defend against [the] particular charge." *Michelson,* 335 U.S. at 476, 69 S.Ct. at 218.

James contends there was insufficient evidence to support the revocation of his probation due to the possession of the marijuana cigarette.[8] He argues that the State's evidence, consisting of Officer Windbigler's testimony and the results of a Scott Reagent field test, was insufficient to prove the cigarette contained marijuana.

▮ A conviction for possession or use of a narcotic or drug, which must be based on proof beyond a reasonable doubt, may be sustained on the testimony of a person knowledgeable about the narcotic or drug. *Moon v. State* (1990), Ind.App., 560 N.E.2d 76, 77. Revocation of probation, which is based on the easier standard of

---

7. Evidence of prior bad acts strips the defendant of the presumption of innocence because the jury may use a different calculus of probabilities in deciding whether to convict. *See Thompson, supra* at 1097–1098, n. 6 (*quoting* EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 1:10 at 4 (1984–1991)).

8. James' appeal of this probation revocation was consolidated with his appeal of his conviction by order of this court on May 17, 1993.

preponderance of the evidence, may also be sustained on such testimony.

In the present case, Officer Windbigler testified he had made at least a hundred drug arrests and was familiar with the appearance of drugs, including marijuana. He testified he knew from his prior experience that the cigarette found in the car James was driving was a marijuana cigarette because it was tightly rolled on both ends and contained a green leafy substance. He further testified the field test verified what he already knew from his experience. Under the reasoning of *Moon*, this testimony was sufficient to sustain the probation revocation.

We reverse and remand for a new trial because of the erroneous admission of evidence of James' prior conviction, drug related activities, and probation status. We affirm on all other issues.

MILLER, J., concurs.

CHEZEM, J., concurs in result.