## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 17 2015, 9:31 am

_Kevin S. Smith_

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Marce Gonzales, Jr.<br>Dyer, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Monika Prekopa Talbot<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth Ray Barnett, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 17, 2015<br><br>Court of Appeals Cause No.<br>45A05-1408-CR-374<br><br>Appeal from the Lake Superior Court<br>Cause No. 45G03-1210-FA-28<br><br>The Honorable Diane Ross Boswell, Judge |

**Barnes, Judge.**

# Case Summary

[1] Kenneth Ray Barnett, Jr., appeals his convictions for Class A felony child molesting and Class C felony child molesting. We affirm.

# Issue

[2] The issue is whether the trial court abused its discretion in admitting evidence referencing Barnett's criminal charges in another jurisdiction.

# Facts

[3] Barnett and Julie Roshanmanesh met in March 2007 and married in June 2009. Barnett moved in with Roshanmanesh at her home in LaPorte, Indiana, a few weeks after they met. Roshanmanesh had two children: a daughter, H.H., who was around ten years old, and a son, T.H., who was around eight years old. The family moved from LaPorte to Hobart, Indiana, (on Missouri Street) in November 2007, then to Louisiana in June 2009, and returned to Hobart (on Home Street) in September 2009. Barnett served as a "father figure" to H.H. and T.H., whose biological father was effectively absent. Tr. p. 109.

[4] H.H. was subjected to several incidents of sexual abuse perpetrated by Barnett during the approximately four years that Barnett lived with the family. On one occasion at the Missouri Street residence, when Roshanmanesh was not home, Barnett called H.H., who was playing outside with T.H., inside the house. Barnett indicated that only H.H. should come. H.H. went into Barnett's room and sat down on the bed. Barnett, who was seated at his computer, instructed

H.H. to sit on his lap. Barnett began "caressing" H.H.'s lower back and leg and touched H.H. under her shirt. *Id.* at 106. Barnett also put his hand in H.H.'s pants and touched her vagina with his fingers and the back of his hand. After he heard a door shut, Barnett "stopped immediately" and directed H.H. to go downstairs. *Id.* at 108.

[5] On another occasion at the Missouri Street residence, H.H. went upstairs to say goodnight to her mother, who was in the computer room, and Barnett, who was in the bedroom. Barnett leaned in to give H.H. a hug and a kiss and inserted his hand under H.H.'s baggy nightshirt and stuck his hand down the back and side of H.H.'s underwear, touching her buttocks.

[6] On another occasion, at the Home Street residence, while Barnett and H.H. were alone in the house, Barnett summoned H.H. into his bedroom. While H.H. was sitting on the edge of the bed, Barnett forced H.H. down on the bed and straddled her. Barnett held H.H.'s face to prevent her from moving. Barnett unzipped his jeans, removed his penis, and positioned it toward H.H.'s face. Barnett's penis went between H.H.'s lips but not between her teeth. Barnett also kissed H.H. on the side of her face. After he heard a knock at the door, Barnett stopped and went downstairs. H.H. testified that, during the time in which Barnett lived with the family, Barnett attempted to force his penis in her mouth "numerous times." *Id.* at 128, 150.

[7] Also, on several occasions, Barnett would go into H.H.'s bedroom at night while H.H. was in bed. Barnett would take H.H.'s hand and guide it to stroke

his penis. During these incidents, H.H. was "very scared" and pretended to be asleep. *Id.* at 128.

[8] When the family lived in LaPorte, H.H. reported having pain and other "issues" in her vaginal area. *Id.* at 74. Roshanmanesh suggested that H.H. undergo an examination, but Barnett advised against medical treatment, reasoning that Roshanmanesh could not afford it. Instead, Barnett took Roshanmanesh to purchase some Vagisil cream.

[9] Because she did not want to disrupt her mother's happiness, H.H. did not tell her mother about the continuing sexual abuse. Barnett also ordered H.H. not to notify anyone, explaining to H.H. that no one would believe her. In December 2010, Barnett and Roshanmanesh separated, although Barnett continued to make intermittent contact.

[10] In fall 2012, when H.H. was about fifteen years old, Roshanmanesh began receiving frequent phone calls from Barnett, and he began "coming around again." *Id.* at 132. This made H.H. anxious, and she began skipping her high school classes. When Roshanmanesh was notified by the school about H.H.'s absences, she confronted H.H. Roshanmanesh asked H.H. what was provoking her truancy, and H.H. broke down into "hysterics" and told her mother about the sexual abuse. *Id.* at 65. Roshanmanesh went to the police station and reported Barnett.

[11] The State charged Barnett with Class A felony child molesting and Class C felony child molesting. At the jury trial, during opening statement, the

prosecutor explained that H.H. had endured Barnett's sexual abuse from 2007 to 2010 and stated that Roshanmanesh's testimony would reveal that Barnett "has charges in Louisiana for these same . . . type incidents [sic]." *Id.* at 32. Barnett's counsel objected to the reference to extra-jurisdictional charges, and the trial court noted but overruled the ongoing objection. Barnett's counsel also requested a mistrial, which was denied. During witness testimony, the prosecutor asked Roshanmanesh about the charges pending against Barnett in Louisiana, to which Barnett's counsel objected. The court permitted the line of inquiry, and Roshanmanesh testified that Barnett "has two charges in Louisiana," one of which she characterized as a "rape" charge. *Id.* at 69. During the trial, one juror submitted a question pertaining to this testimony: "What is the status of the Louisiana charges [?]" Tr. Jury Trial Juror Questions p. 2. This question was not read aloud or answered in court.

[12] Barnett was convicted as charged and now appeals.

## Analysis

[13] Barnett argues that the trial court's admitting reference to and evidence of charges in another jurisdiction was improper and warrants a new trial. "The evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion." *Herrera v. State*, 710 N.E.2d 931, 935 (Ind. Ct. App. 1999), *trans. denied*. A trial court's decision to admit evidence will not be reversed "absent a showing of manifest abuse of

the trial court's discretion resulting in denial of a fair trial." *Minnick v. State*, 544 N.E.2d 471, 477 (Ind. 1989).

[14] Barnett argues that the admissions at trial violated Indiana Evidence Rule 404(b), which proscribes admission of "[e]vidence of a crime, wrong, or other act" to prove a person's propensity to certain acts or behavior. The rule serves to avoid the "forbidden inference": that the defendant has a criminal propensity and, therefore, is guilty of the presently charged offense. *Hicks v. State*, N.E.2d 215, 218-19 (Ind. 1997). When assessing the admissibility of evidence objected to on Rule 404(b) grounds, the following standard is applied: "(1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect . . . ." *Id.* at 221. Even if admission of the evidence was improper, however, we need not reverse or set aside the trial court's ruling if the error was harmless. *See, e.g.*, *Barker v. State*, 695 N.E.2d 925, 931 (Ind. 1998); *Wickizer v. State*, 626 N.E.2d 795, 800 (Ind. 1993).

[15] Regarding the first prong of the Rule 404(b) test, Barnett argues that the State's sole intention in mentioning the Louisiana charges was for the impermissible purpose of showing his criminal propensity. The State counters that reference to the Louisiana charges is admissible for purpose of demonstrating Barnett's criminal plan, as manifest in the continuity of the sexual molestation. Although Rule 404(b)(2) expressly allows "plan" as a permissible purpose, this court has clarified that the Rule is a narrower exception than its common-law predecessor

and that "[w]e must take care to ensure that Rule 404(b)'s exceptions do not swallow the rule." *Remy v. State*, 17 N.E.3d 396, 399-400 (Ind. Ct. App. 2014), *trans. denied*; *see also Greenboam v. State*, 766 N.E.2d 1247, 1253 (Ind. Ct. App. 2002), *trans. denied*.

[16]   As to the second prong, Barnett contends that mention of the extra-jurisdictional charges is only relevant to the forbidden propensity inference and, therefore, its probative value is substantially outweighed by its prejudicial effect. The State argues that the brevity of the two references negates their prejudicial effect. Evidence of distinct criminal charges of the same type at bar can be "highly prejudicial." *Thompson v. State*, 690 N.E.2d 224, 235 (Ind. 1997). The trial court, however, maintains "wide latitude . . . in weighing the probative value of the evidence against the possible prejudice of its admission." *Evans v. State*, 727 N.E.2d 1072, 1079 (Ind. 2000).

[17]   Even assuming that references to the Louisiana charges were improperly admitted in violation of Rule 404(b), the trial court's decision to admit that evidence does not warrant reversal, as the admission amounted to harmless error. H.H. testified at length to the incidents detailed above. References to the charges pending against Barnett in Louisiana were not "critical" to the State's case but were marginally significant in light of H.H.'s testimony describing years of sexual abuse. *See Thompson*, 690 N.E.2d at 236.

[18]   Mention of the Louisiana charges was not a "steady drumbeat" in the State's case. *James v. State*, 622 N.E.2d 1303, 1310 (Ind. Ct. App. 1993). The

Louisiana charges were raised in two isolated points during the trial. The State's direct examination of H.H., the principal evidence in the case, elicited details about each of the incidents outlined above but omitted any reference to pending charges in Louisiana. References to the Louisiana charges were limited to brief discussions during the State's opening statement and Roshanmanesh's testimony. Given that H.H. recounted in detail the ongoing molestation as well as discrete incidents of abuse in Hobart and LaPorte, such "substantial independent evidence of guilt" makes it "unlikely that the erroneously admitted evidence played a role in the conviction." *Newman v. State*, 719 N.E.2d 832, 837-38 (Ind. Ct. App. 1999), *trans. denied*.

Barnett claims that the juror's question about the Louisiana charges suggests that mention of the charges was not wholly inconsequential. A single, undisclosed inquiry by a juror, however, does not establish a "substantial likelihood" that the evidence contributed to the jury's unanimous finding of guilt. *Sundling v. State*, 679 N.E.2d 988, 994 (Ind. Ct. App. 1997). In light of H.H.'s unequivocal, detailed testimony about the charged sexual abuse, two brief references to charges pending in Louisiana are "sufficiently minor so as not to affect the substantial rights" of Barnett and, accordingly, their admission constitutes harmless error. *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind. 1995).

## Conclusion

Even if the trial court abused its discretion in admitting the evidence referencing Barnett's Louisiana charges, such error was harmless. We affirm.

Affirmed.

May, J., and Pyle, J., concur.