Joseph **STREET**, Appellant/Defendant,

v.

**STATE of Indiana**, Appellee/Plaintiff.

No. 35A02–8907–CR–321.[1]

Court of Appeals of Indiana, Fifth District.

March 18, 1991.

**1.** This case was reassigned to this office on January 2, 1991.

Susan K. Carpenter, Public Defender, J. Michael Sauer, Deputy Public Defender, Office of Public Defender, Indianapolis, for appellant/defendant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee/plaintiff.

BARTEAU, Judge.

Joseph Street appeals a jury verdict of guilty to one count of receiving stolen property [2] and one count of dealing in marijuana to a recipient under eighteen years of age.[3] The minor, Rusty Wright, was the prosecution's principal witness. The question presented is whether an unfair trial resulted from allowing Wright to testify that he had received marijuana from Street on one occasion before the act with which Street was charged. We hold that admis-

---

2. Ind.Code 35–43–4–2(b).

3. IC 35–48–4–10(b)(1)(A).

sion of the testimony was harmful error and reverse on both counts.

■ Where, as here, the verdict depends largely upon a jury's appraisal of witness credibility, the inquiry whether error was harmful entails a degree of weighing the evidence and judging credibility to determine whether the error influenced the verdict. *Miller v. State* (1982), Ind., 436 N.E.2d 1113. Accordingly, we supply an expanded review of the facts.

### FACTS

Rusty Wright and Frank Denton burglarized a residence, taking, among other things, three televisions and two videocassette recorders. Two days later, two of the TVs and one of the VCRs were recovered by Deputy Farthing from the home of the defendant, Joseph Street. Farthing testified that he had focused his investigation of the burglary on Wright, who at that time was "listed as a runaway," Denton, and a third person named Matt Elzey; that Wright said he had taken some of the burgled items to Street's house; and that when questioned, Street acknowledged possession of the goods and readily produced them, explaining that Wright had told Street that he had been ejected by his father from the family home and needed a place to store some of his belongings temporarily. Farthing testified that he had pointed out to Street the owner's name engraved in one of the televisions, and Street had indicated that he had seen the engraving before Farthing mentioned it, thinking it "kind of funny." Finally, Deputy Farthing testified that Wright led him to a cache, hidden in an industrial area, of five small plastic bags of marijuana, which Farthing sent to the police laboratory for analysis.

Wright, sixteen at the time of the burglary, admitted his complicity in it. He testified that he had been staying at the trailer home of Denton and Elzey, where the stolen goods were secreted. He continued that Street had come to the trailer, looked at and expressed interest in the goods, and was informed by Wright and Denton that it was the proceeds of a burglary. Next,

Wright testified that he, Denton and Street took two TVs and one VCR to Street's home, where he and Street went to the detached garage. There, Street opened the trunk of a car and allowed Wright to select two, one-ounce bags of marijuana from a grocery sack.

Wright and Denton then returned to the trailer, where they divided the marijuana into eight, quarter-ounce bags. Wright ended up with five of the bags, which he later revealed to Farthing.

Wright's story varied somewhat on cross-examination. He and Denton had gone to Street's, where they informed Street that they had some stolen goods at their trailer, and that the three then drove to the trailer. Street examined the merchandise and said he wanted it, but had no money. Wright suggested a swap of goods for marijuana, to which Street agreed. The three returned to Street's and completed the trade. No other adults were present.

After Wright's testimony, the prosecution called Denton, who also admitted his complicity in the burglary. He testified that at the trailer there was no discussion concerning disposing of the stolen goods, but that he had heard Wright say something about taking the items to Street. Denton agreed that the three of them took the goods to Street's, but stated that Street and Wright never left the house, and that he witnessed no transfer of marijuana. However, Denton testified that after leaving Street's, Wright gave him a bag of marijuana.

On cross-examination, Denton testified that Street had not been told that the goods were stolen, because he and Wright did not want to reveal their participation in the burglary. Also, there was no talk of trading the items for marijuana. Moreover, Wright and Elzey had been selling marijuana during the previous two weeks, and on at least three occasions those two had gone out in Elzey's car and returned with marijuana. Finally, Denton testified that there were other adults at Street's, and that he believed Wright had told Street

something about Wright's having left home.

Next, the State called the police chemist, who testified that the five plastic bags contained marijuana totalling just under one ounce—25.1 grams. The State then rested.

Street called three friends, all of whom testified that they were visiting Street at his home when Wright appeared. All three testified that Wright said he wanted to store some belongings at Street's, and two testified that Wright mentioned having been told by his parents to leave their house. Janet Miller, who lives with Street, repeated the same exculpatory story.

At that point, Street took the stand. He reiterated the story, and denied Farthing's testimony about prior notice of the owner's name engraved in one of the TVs, testifying that he never saw the name until Farthing pointed it out.

Here, we pause to note that if the issue before us were solely an allegation of insufficient evidence, we would affirm. This case illustrates the wisdom of our well-settled procedure in sufficiency appeals of considering only the evidence favorable to the verdict and the inferences reasonably drawn therefrom, of refusing to reweigh the evidence or judge the credibility of witnesses, and affirming if there is substantial evidence of probative value. *See, e.g., McClaskey v. State* (1989), Ind., 540 N.E.2d 41.

The challenged evidence entered during direct examination of Wright. The prosecutor wanted to question him about prior transactions with Street for marijuana. Street objected on the grounds that the testimony was impermissible character evidence. The trial judge sustained, but the prosecutor persisted. After argument, the trial judge reversed himself and overruled the objection. Wright was allowed to testify that a week and a half before the charged crime, he had traded a stereo, his

personal property, to Street for one ounce of marijuana. When Street later testified, he admitted receipt of Wright's stereo, but claimed that the exchange was a purchase for $70.00.

In addition to the initial objection, Street preserved the issue for appeal with a continuing objection and a motion for mistrial. In arguing for admissibility, the prosecutor gave two reasons: first, that the testimony would reveal a common scheme or plan, "a practice on the part of the defendant to deal with this particular witness in exchanging marijuana for personal property"; and second, that later testimony would show recovery of more than two ounces of marijuana, and because Wright had testified to receiving only two ounces for the stolen goods, the State needed the evidence of the first transaction to explain the source of the marijuana in excess of two ounces. The trial court decided to admit the testimony, based on the similarity of twice trading property for marijuana, the proximity in time, and the need to explain the excess weight, without stressing any one factor. At that point, the chemist had not yet testified that less than one ounce had been recovered.

## DISCUSSION

This case focuses on the admissibility in a criminal trial of evidence that a defendant committed a crime with which he has not been charged.[4] Evidence of such an "extrinsic offense"[5] is "generally inadmissible if 'its sole relevance is to show that the defendant's general character is bad and that he therefore has a tendency to commit crimes.'" *Penley v. State* (1987), Ind., 506 N.E.2d 806, 808 (quoting *Schnee v. State* (1970), 254 Ind. 661, 662, 262 N.E.2d 186, 187). Restated, the rule is "evidence which can prove or tend to prove that an accused engaged in criminal activity similar to the charged crime is generally

---

**4.** In addition to the evidentiary issue, Street's brief urges reversal on the basis of a defect in the charging information. Because we reverse on the evidentiary question, we need not address that defect.

**5.** Our supreme court adopted this term for uncharged crimes or misconduct over formulations such as "unrelated criminal activity," "prior bad acts," and "similar crime." *Gibbs v. State* (1989), Ind., 538 N.E.2d 937, 939 n. 1. We follow suit.

inadmissible to prove an accused's propensity to commit crime or an accused's guilt of the charged crime." *Malone v. State* (1982), Ind., 441 N.E.2d 1339, 1345.

■ The general rule addresses concern that a jury will convict solely on an inference of bad character flowing from evidence of the defendant's extrinsic offense, which would violate our jurisprudential tenet against punishing defendants for what they are, rather than for what they did. *Penley, supra* at 808. Two additional reasons support a bar against admission of extrinsic offense evidence: (1) to relieve a defendant of the need to respond to unexpected accusations, and (2) to decrease the chances that a jury will become confused by collateral issues or have its attention diverted from the charged crimes. *Gibbs v. State* (1989), Ind., 538 N.E.2d 937, 939.

■ However, extrinsic offense evidence is not *per se* inadmissible. *Penley* explains that "evidence of uncharged misconduct may often be admissible because it promotes a legitimate inference about some issue in the cause, notwithstanding its incidental revelation about the defendant's character." *Id.* at 808. A treatise on Indiana law identifies nine exceptions to the general rule, allowing evidence of extrinsic offenses to promote an inference about the defendant's intent, motive, malice, knowledge, sanity, capacity, identity, common scheme or plan, or depraved sexual instinct. 12 R. Miller, *Indiana Evidence*, §§ 404.208–.216.[6] When stating the general rule, our supreme court frequently names five exceptions: intent, motive, purpose, identity, and common scheme or plan. *See, e.g., Williams v. State* (1986), Ind., 489

N.E.2d 53, 55; *Foust v. State* (1981), Ind., 428 N.E.2d 776, 778.

■ In the case before us, the prosecutor argued for admitting Wright's testimony concerning an extrinsic marijuana transaction with Street under "common scheme or plan" or to show "identity." The trial judge admitted the testimony under "common extent plan and scheme."[7]

Indiana cases divide the common plan or scheme exception into two branches, allowing evidence of extrinsic offenses to show (1) "a preconceived plan that includes the charged crime" and (2) "to prove intent, motive, purpose, or identity by showing the defendant committed other offenses with a similar *modus operandi.*" *Gibbs, supra,* at 939 (citing *Malone* and *Penley*).

■ Concerning the latter branch, *Gibbs* points out two different standards for admissibility. To use extrinsic offense evidence to prove identity, the charged crime and the extrinsic offense must share enough unusual, distinctive characteristics to create a "signature" of the perpetrator. But, extrinsic offense evidence introduced to show state of mind, that is, intent, motive, or purpose, need not be so closely similar to the charged offense to become admissible.

Concerning the former branch, *Gibbs* sets out a third standard for admissibility. Extrinsic offense evidence that tends to prove the existence of a preconceived plan is admissible only if the charged crime and the extrinsic crime are " 'so related in character, time and place of commission as to establish some plan which embraced both

---

**6.** Miller also discusses the *"res gestae"* theory of admissibility of extrinsic offense evidence. *Res gestae* means evidence of "happenings near the charged crime in time and place, which … 'complete the story of the crime on trial by proving its immediate context.' " Miller, *supra,* § 404.206 at 259 (quoting McCormick, *Evidence* § 190, at 448 (2d ed. 1972)). In precise use, *res gestae* is not an exception to the general rule, because such evidence is "offered not to show that the defendant has a propensity to act in criminal ways, but to prove and explain the occurrence of a specific, charged crime." Miller, *supra,* § 404.206 at 261. *See, e.g., Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843

(evidence that defendant stole automobile used as getaway car in robbery).

**7.** When arguing for admissibility of the extrinsic offense, the State asserted, in light of Wright's testimony that he received exactly two ounces of marijuana for the stolen goods, that the testimony was necessary because the State would show recovery of more than two ounces. However, the State showed less than one ounce. Therefore, *res gestae* provides no theory under which to admit the challenged testimony. Accordingly, we analyze admissibility solely under common scheme or plan.

the prior ... criminal activity and the charged crime.' " *Id.* (quoting *Malone, supra* at 1347).

In summary, evidence of extrinsic offense is admissible only if it "promotes a legitimate inference about some issue," *Penley, supra,* and such inference tends to prove the defendant's state of mind, identity as the perpetrator of a signature crime, or formulation of a preconceived plan. Unless the extrinsic offense evidence is probative of some element of the charged crime, its admission should be seen as raising the forbidden inference of "an accused's propensity to commit crime or ... guilt of the charged crime." *Malone, supra.*

■ Having outlined the law, we apply it to this case. We note first that on the charge of receiving stolen property, the only issue was whether Street knew the goods were stolen. Because the extrinsic offense evidence did not concern a prior trade of marijuana for stolen property, we accord it no probative value here. Wright's testimony of the first transaction proves nothing about whether Street knew the subject property of the second transaction was stolen. *See Johnson v. State* (1982), Ind.App., 441 N.E.2d 1015 (gravamen of receiving stolen property is defendant's guilty knowledge; possession of stolen goods undisputed, but evidence insufficient to prove guilty knowledge). Thus, the extrinsic offense evidence was inadmissible on the charge of receiving stolen property because it failed to raise an inference about an issue.

■ As to whether the extrinsic offense testimony was admissible on the charge of dealing marijuana to a minor, we see no relevance between the extrinsic offense testimony and Street's state of mind. The statute for dealing in marijuana to a minor requires a knowing or intentional action, I.C. 35–48–4–10(b)(1)(A), so arguably the extrinsic offense tends to prove that Street dealt marijuana knowingly and intentionally. However, the dispute at trial was not whether Street dealt marijuana knowingly or intentionally, but whether he dealt marijuana at all. Street did not advance a defense of lack of intent or knowledge.

Therefore, to admit the extrinsic offense testimony to prove his state of mind was to admit evidence on a point not at issue. *Cf. Sizemore v. State* (1985), Ind., 480 N.E.2d 215. To admit extrinsic offense evidence to show intent where the defendant's intent is not genuinely disputed would allow the exception to overwhelm the general rule.

■ Similarly, we see no relevance between the extrinsic offense testimony and the identity exception. Again, the dispute here was whether the crime occurred, not, as in *Penley,* the identity of the perpetrator of a crime, the commission of which was uncontested. Because identity was not at issue here, and because the extrinsic offense was not so strikingly similar to the charged crime as to constitute the signature of the defendant, the extrinsic offense testimony was inadmissible under the identity exception.

■ Lastly, we examine admissibility under preconceived plan. We recall the standard for admission here: the charged crime and the extrinsic offense must be " 'so related in character, time, and place of commission as to establish some plan which embraced both....' " *Gibbs, supra.* In the case before us, the extrinsic offense evidence showed the defendant had committed the charged offense of dealing marijuana to a minor twice. In the sense that the two offenses were repetitive, close in time and place, and involved the same two parties, they could be said to satisfy the standard. However, we think mere repetition is insufficient to establish a preconceived plan. We find the following analysis persuasive:

> The inference from 'pattern' by itself is *exactly* the forbidden inference that one who violated the drug laws on one occasion must have violated them on the occasion charged in the indictment. Unless something more than a pattern and temporal proximity is required, the fundamental rule is gone.

*United States v. Beasley* (7th Cir.1987), 809 F.2d 1273, 1278 (emphasis in original).

The "something more" in *Beasley* has been described by our supreme court as a

requirement that the extrinsic offense be "tangibly connected" to the charged crime. *Clark v. State* (1989), Ind., 536 N.E.2d 493, 495. In *Clark*, Justice Shepard gave two examples of the necessary tangible connection, both from other jurisdictions: a case where evidence of an earlier robbery was admissible in the trial of a second robbery because the second victim's name had been procured from the first victim; and, a case admitting testimony that the defendant had burglarized a garage to obtain a cutting torch, where the defendant was on trial for burglarizing a post office using the torch. Although *Clark* cites no Indiana decisions, the cases given reveal its notion of preconceived plan: "[w]ithout some nexus, the evidence would wrongly impugn the defendant's character without being probative of a material fact." *Id.* at 495.

 On the basis of those examples, we would hold that the required nexus is absent here. The evidence of the extrinsic offense merely repeated the charged crime, without establishing any nexus or compelling interrelationship. However, *Clark* appears to approve a rule that in drug cases the required nexus may be shown through evidence of criminal acts linked only by repetition, provided there is proximity in time. *Cf. Beasley, supra* (requiring more than repetition and temporal proximity). In *Clark*, the defendant was accused of possessing cocaine and heroin in 1985. The prosecution presented evidence that the defendant had been convicted of the same two offenses in 1974, and of conspiring to distribute the two drugs in 1980. The supreme court rejected the State's argument on appeal that the extrinsic offenses composed a preconceived plan to violate the drug laws, holding them too remote in time.

*Clark* specifically noted the holding in *Sweet v. State* (1986), Ind., 498 N.E.2d 924, over one dissent without opinion, that evidence of extrinsic drug transactions was admissible as showing a "common scheme and plan of conducting a drug dealing busi-

ness for profit," *id.* at 928, where the extrinsic offenses occurred nine months before the charged crime and all transpired between the appellant and the same informant.[8] Therefore, we find Street's reliance on *Clark* misplaced, because the extrinsic offense here occurred well within the *Sweet* nine-month time frame, and similarly transpired between the defendant and one informant. *See also Bombe v. State* (1988), Ind., 525 N.E.2d 336 (evidence of other drug transactions four to five months prior admissible as showing scheme or plan of selling drugs) (two Justices dissenting without opinion); *Bartruff v. State* (1988), Ind.App., 528 N.E.2d 110, *trans. denied* (citing *Sweet*).

Street also relies on *Riley v. State* (1986), Ind., 489 N.E.2d 58, because it held reversible error occurred when an informant testified to prior drug sales and use with the defendant, who had been charged with one count. *Riley* provides only little help to Street. The extrinsic offense testimony there had been barred by a motion *in limine*, yet the prosecutor persistently tried to circumvent the trial judge's ruling. The basis of reversal was that the prosecutor's conduct had created an evidentiary harpoon. Such a basis is pointedly absent here. On the other hand, we cannot ignore the similarity between *Riley* and the instant case. In both, conviction ensued from the testimony of an informant who testified to having engaged in drug activity with the defendant. The *Riley* court wrote that the prosecutor had done considerable damage by asking the informant why he had gone to the defendant to acquire more cocaine and where he had made prior drug purchases. Significantly, the court's *dicta* in *Riley* regarded the informant's testimony that on several occasions he had purchased from the defendant a white powder that affected him similarly and cost the same as insufficient to establish a common scheme under the identity/*modus operandi* exception. However, *Sweet* appears either to extinguish *sub silentio* that idea, or

---

**8.** The court in *Sweet* did not specify which branch of common scheme or plan made the

testimony admissible.

to approve admission of extrinsic drug transactions under preconceived plan.

Despite the similarity between this case and *Sweet,* we hold the extrinsic offense inadmissible because we see no preconceived plan created by the defendant. The only plan apparent to us from the State's evidence belonged to Wright, whose testimony indicated that he engineered a scheme to trade home entertainment equipment, stolen or otherwise, for marijuana. Wright's testimony revealed no plan on Street's part. Wright testified that in the first transaction, he traded his stereo to Street for marijuana, but in the second transaction Street offered to buy the goods, and marijuana became involved only at Wright's suggestion. Thus, evidence of the first transaction raised the forbidden inference of propensity to commit crime or guilt of the charged crime without simultaneously raising a legitimate inference. The trial judge was correct in his initial decision to prohibit the extrinsic offense testimony.

If we were to hold the extrinsic offense testimony admissible as evidencing a preconceived plan to deal in marijuana, we would need to determine whether the probative value of the testimony outweighed its prejudicial effect. *Montgomery v. State* (1980), 274 Ind. 544, 412 N.E.2d 793, *reh'g denied.* Notwithstanding that the State's brief did not respond to Street's argument on this point, we see little probative value in the extrinsic offense testimony. The fact that Street may have traded marijuana for a stereo one day does not tend to prove that he committed a similar act a week and a half later. The testimony did show that Wright and Street knew each other before the day of the charged crimes. However, that fact could have been brought forth without the prejudice inherent in the testimony of an earlier illicit trade.

Moreover, our restrictive view of preconceived plan poses no burden to the prosecution. As pointed out in *Gibbs, supra* at 941, the State can remove any barrier to admission of extrinsic offense evidence by charging the defendant with those crimes.

Our inquiry now becomes whether the error mandates reversal. The State's argument on the question resembles a sufficiency of the evidence approach, repeating the evidence favorable to the verdict and reminding us that a conviction may be had upon the testimony of a single witness. However, the proper inquiry is not whether the evidence was sufficient, but whether the error was harmful and yielded a verdict "substantially swayed" by admission of the extrinsic offense testimony. *Stwalley v. State* (1989), Ind., 534 N.E.2d 229, 232, *reh'g denied. See also Coates v. State* (1985), Ind.App., 487 N.E.2d 167.

[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Miller v. State* (1982), Ind., 436 N.E.2d 1113, 1114 (emphasis and citation deleted).

We cannot say with fair assurance that the verdict was not substantially swayed by the error. This case differs from *Sweet* and *Bombe,* where the extrinsic offense witnesses were police officers and informants operating under police supervision. Here, the witness was a burglar and the activities to which he testified were not carried out subject to the scrutiny of the police. His credibility stood to be bolstered by what amounted to an opportunity to repeat his story. *See Lenover v. State* (1990), Ind.App., 550 N.E.2d 1328, *reh'g denied* (prejudice compounded where only one witness testifies to extrinsic offense); *see also Johnson v. State* (1989), Ind.App., 544 N.E.2d 164, *trans. denied.*

To convict, the jury must have believed Wright. Allowing him to testify about an earlier exchange undoubtedly increased his credibility. Although we cannot say that

the jury would have disbelieved Wright absent the extrinsic offense testimony, we are certain that the testimony enhanced his version of events and made conviction more likely. At a minimum, we strongly doubt that admission of the testimony did not substantially influence the result. Accordingly, Street is entitled to a retrial untainted by testimony of an extrinsic offense.

REVERSED AND REMANDED FOR RETRIAL.

ROBERTSON and SHIELDS, JJ., concur.