Thomas O. **MOORE, Appellant–Defendant Below,**

v.

**STATE of Indiana, Appellee–Plaintiff Below.**

No. 48A02–9310–CR–568.

Court of Appeals of Indiana.

July 18, 1995.

Rehearing Denied Aug. 31, 1995.

Transfer Denied Nov. 8, 1995.

Samuel Hodson, Steven J. Halbert, Cohen & Malad, P.C., Indianapolis, for appellant.

## OPINION

SULLIVAN, Judge.

Thomas O. Moore (Moore) appeals his convictions of attempted criminal deviate conduct,[1] a class A felony, and confinement,[2] a class B felony. As this is Moore's second appeal, some additional explanation is in order.

Moore was initially charged with two counts by information. Those counts read as follows:

"[COUNT I]
ATTEMPTED CRIMINAL
DEVIATE CONDUCT
CLASS A FELONY
I.C. 35-41-5-1

\* \* \* \* \* \*

On or about the 8th day of October, 1986, in Madison County, State of Indiana, THOMAS D. MOORE did attempt to commit the crime of Criminal Deviate Conduct by knowingly asking [L.M.] to get into an automobile which was driven by one THOMAS D. MOORE, by striking and beating and closing the automobile door on [her], by threatening the use of a deadly weapon, to-wit: a knife and threatening the life and safety of [L.M.] if she did not perform fellatio on the said Thomas D. Moore, which conduct constituted a substantial step toward the commission of said crime of Criminal Deviate Conduct.

\* \* \* \* \* \*

[COUNT II]
CRIMINAL CONFINEMENT
CLASS B FELONY
I.C. 35-42-3-3

\* \* \* \* \* \*

On or about the 8th day of October, 1986, in Madison County, State of Indiana, THOMAS D. MOORE did knowingly confine [L.M.] without her consent by forcing [L.M.] into the automobile being driven by THOMAS D. MOORE by force and by threat, and while armed with a deadly weapon, to-wit: a knife."

Record at 5.

At trial, Moore was convicted of both crimes. Upon appeal, this court determined that the trial court erroneously refused to give an instruction which would have allowed the jury the option of convicting Moore of the lesser included offense of battery as within the alleged attempted criminal deviate conduct. *Moore v. State,* No. 48A02–8909–CR–472 (May 29, 1991) (Memorandum Decision upon Petition for Rehearing). Accordingly, that initial disposition reversed the attempted criminal deviate conduct conviction, while leaving the confinement conviction intact, and ordered a new trial upon the attempted deviate conduct charge alone.

Upon rehearing, we found that further clarification of the disposition was necessary:

"Footnote 2 of our earlier decision is the only allusion to the confinement conviction and states in effect that whether that conviction should remain of full force and effect will depend upon the outcome of the retrial upon the attempted deviate conduct charge. By citing to *Ryle v. State* (1990) 2d Dist., Ind.App., 549 N.E.2d 81, *trans. denied,* it was our intention to imply that the evidence of record supports the conviction for confinement. For that reason we were of the view that there was no reason to require the State to reprove that charge.

On the other hand, viewed in the context of an attempted criminal deviate conduct conviction (should that be the result of retrial) the conviction for confinement should be set aside because it is, under the *Ryle* analysis, an included offense of the deviate conduct offense *as charged.* [Emphasis in original.]

Only if retrial results in a conviction of the lesser included offense of battery, may the confinement conviction remain valid. This is so because the battery, i.e., the 'striking and beating and closing the automobile door on [her]' is an offense separate and apart from the confinement which oc-

---

1. I.C. 35-42-5-1 (Burns Code Ed.1994) and 35-42-4-2 (Burns Code Ed.1994).

2. I.C. 35-42-3-3 (Burns Code Ed.1994).

curred when Moore forced the victim into the automobile.

We now reaffirm our decision which reverses the judgment of conviction upon the attempted criminal deviate conduct charge and remand for trial upon that count only. Following that trial, the trial court must determine whether the confinement conviction remains valid or whether it must be vacated for the reasons stated herein." Record at 26–27 (hereinafter, "opinion upon rehearing").

On remand for a second trial, Moore was again convicted of attempted criminal deviate conduct.[3] The evidence most favorable to that judgment indicated that, while driving home on State Road 32 around one o'clock in the morning, L.M. noticed a car closely following her own. Because she saw red flashing lights, and assumed the car was a police officer, she pulled to the side of the road, and stepped out of her car. A man, whom she later identified as Moore, approached her car with a flashlight, asking if she knew how fast she had been going. At that point, Moore threw her up against her car, then back into the driver's seat, where he began to strangle her. She was then dragged out of her car and forced into Moore's car, which had been parked behind her own.

Once partially inside the car, L.M. continued to struggle. While he tried to get her into the passenger side of the car, Moore closed the car door on her leg. Moore then got into the driver's seat, held a knife to L.M.'s throat, and attempted to force her to perform fellatio upon him. L.M. continued to struggle, escaping from Moore's car when police pulled up behind the two vehicles.

To lend further support to its case, the State also introduced evidence that Moore had been convicted of the rape of a second woman, A.L., in Tipton County.

Once Moore was again convicted of attempted criminal deviate conduct, the trial court, in clear violation of our instructions in

our opinion upon rehearing, denied his request to vacate the confinement charge as a lesser included offense. It is from this second trial that the present appeal arises. We reorganize and restate the issues as follows:

(1) whether, in its retrial of Moore, the trial court committed reversible error in admitting evidence of an unrelated offense which occurred eleven months after the offense for which he was charged;

(2) whether it was error for Moore to be retried upon the attempted criminal deviate conduct charge when he had previously been convicted of the lesser included offense of confinement based upon the same factual circumstances;

(3) whether the trial court erred in imposing a consecutive sentence and in refusing to vacate Moore's confinement conviction as a lesser included offense after this court so directed upon rehearing.

■ Initially, we note that the State has filed no brief in opposition to Moore's arguments upon appeal. Nevertheless, we are bound to examine the issues presented and correctly apply the applicable law. *Nash v. State* (1982) Ind.App., 433 N.E.2d 807.

## I. EVIDENCE OF AN UNRELATED CRIME

At Moore's second trial, the prosecution introduced evidence of an attack upon another woman, A.L., which occurred eleven months after the original offense.

The disputed evidence consisted of A.L.'s testimony regarding the circumstances surrounding her rape. A.L. testified that, near eleven o'clock on the night of September 15, 1987, she had been driving on State Route 28 in Tipton County, and had pulled to the side of the road when she saw a car behind her flashing its lights from bright to dim.[4] A man, identifying himself as a policeman, approached her car with a flashlight. He asked her if she knew how fast she was going, and if she would perform a field sobriety test.

---

3. The information filed by the State in Moore's second prosecution of the attempted criminal deviate conduct charge was worded identically to the initial charge. The information was amended only to reflect that Moore's middle initial was O. rather than D.

4. A.L. also stated that at one point the car following her appeared to have two red lights blinking in its back window.

Although he carried no weapon, he blindfolded A.L., and restrained her with plastic handcuffs when she exited the car.

Her assailant placed her in the passenger seat of his car, and drove to another spot. He then attempted to force her to perform fellatio upon him. When she refused, he strangled her and raped her repeatedly, prior to releasing her. Although A.L. testified that she could not identify her assailant because he kept the flashlight in her face, the record indicates that Moore was ultimately convicted of the rape in Clinton County Superior Court.[5]

The evidence was ultimately admitted under an exception to Indiana Rule of Evidence 404(b). Moore, however, alleges that the State possessed no proper justification for the admission of the evidence. He claims that the testimony was impermissible character evidence which does not fit into any exception in Rule 404(b). And, because there was neither an issue of the identity of the defendant nor sufficient likeness to the L.M. assault, A.L.'s testimony could not have been introduced under the "common scheme or plan" exception to the rule. He argues this resulted in fundamental error.

Additionally, even had the evidence fallen into one of the enumerated exceptions, he argues, Indiana Rule of Evidence 403 should have applied to preclude the evidence based upon the high probability that it would have a prejudicial impact upon the jury.

We agree with Moore that the evidence of A.L.'s rape was improperly admitted, and reverse his conviction.

In so determining, we look to Evid.R. 404(b), which has governed the admittance of evidence of other crimes, wrongs, or acts in Indiana since its endorsement in *Lannan v. State* (1992) Ind., 600 N.E.2d 1334, and its subsequent adoption in the Indiana Rules of Evidence. That rule reads:

> **"(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

However, in *Lannan*, not only did our Supreme Court adopt Evid.R. 404(b), but it abrogated an additional exception to that rule which had been previously recognized in Indiana: one which allowed the introduction of evidence of prior crimes, wrongs, or acts to show that a defendant possessed a deviate sexual instinct. While opining that Indiana would henceforth allow evidence of previous crimes, wrongs, or acts only in contemplation of those exceptions contained in Federal Rule of Evidence 404(b), the court made clear that it intended the "common scheme or plan" exception to the general rule to remain in place.

■ Here, counsel's arguments with regard to A.L.'s testimony indicate that it was, indeed, admitted under the common scheme or plan exception to Evid.R. 404(b).[6] Extrin-

---

5. At several points in his brief, Moore indicates that the rape of A.L. was an "uncharged," unrelated offense. Appellant's Brief, at 16, 18. However, the record reveals statements, both by the prosecutor and by Moore's own counsel, which indicate that he was convicted of the rape of A.L. in Clinton County Superior Court. Under such circumstances, it cannot be said that A.L.'s rape was "uncharged," but was, rather, uncharged in the present case.

6. The record reveals extensive discussion among the prosecutor, Moore's counsel, and the trial judge regarding the proper definition and application of the common scheme or plan exception.

The cases cited in that discussion, such as *Penley v. State* (1987) Ind., 506 N.E.2d 806, and *Schumpert v. State* (1992) 4th Dist.Ind.App., 603 N.E.2d 1359, also treat the admissibility of evidence under the common scheme or plan exception. It is from this that we deduce the disputed evidence was admitted to show that Moore possessed a common scheme or plan, and we engage in analysis consistent with that exception. However, that evidence of a common scheme or plan may be admitted in order to establish motive, intent, and purpose, must serve to invoke analyses identical to those employed where evidence has been admitted pursuant to those exceptions enumerated in the language of Evid.R. 404(b). Had A.L.s

sic evidence may properly be admitted under Evid.R. 404(b) as per the common scheme or plan exception if it is admitted to either: (1) prove the identity of the perpetrator by showing that the defendant has committed other crimes with an identical *modus operandi;* or (2) as "evidence of a preconceived plan which included the charged crime." *Hardin v. State* (1993) Ind., 611 N.E.2d 123, 129.

■ The record discloses that the reasons underlying the prosecutor's introduction of the testimony were in order to prove Moore's "purpose, motive, [and] intent." Record at 760.[7] Generally, these are all proper purposes for admitting evidence of prior crimes, wrongs, or acts under the "common scheme or plan" exception.

■ The two alternative bases for common scheme or plan evidence may be made more complicated by the fact that proof of "motive, intent or purpose" as contained in 404(b) is viewed as a permissible way to prove identity. In this sense, then, proof of a motive for the particular crime increases the inference of a defendant's identity. Motive and purpose evidence, therefore, may be used to achieve the same ultimate conclusion as common scheme or plan, i.e., identity. In such instance, however, the uncharged act need not be similar or prior. *See* EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 3:16 (1994).

Motive and intent are frequently and erroneously viewed as interchangeable concepts. *See Robinson v. State* (1974) 262 Ind. 463, 317 N.E.2d 850 (upon transfer, adopting the rationale of the Court of Appeals in *Robinson v. State* (1974) Ind.App., 309 N.E.2d 833, 850, *et seq.,* holding that motive, as opposed to intent, is not an element of a crime). Therefore, a statement in *Chanley v. State* (1991) Ind., 583 N.E.2d 126, 129 (citing *Webb v. State* (1983) Ind., 453 N.E.2d 180, which in turn cited an unsupported statement in *Johnson v. State* (1970) 254 Ind. 465, 260 N.E.2d 782) that "motive is always relevant in the proof of a crime" may or may not be an accurate reflection of the law.

■ In this regard we note that *Chanley* involved an escape from the custody of police officers in the officers' car and subsequent theft of another car. The court stated that proof of a prior escape from a Kentucky penal institution was relevant to his "intent to do what whatever was necessary to remain free ... and to his intent to deprive the owners of the vehicles of the use and value of the vehicles he took." 583 N.E.2d at 130. The *Webb* case, *supra,* involved a felony-murder conviction. Evidence of defendant's use of illegal drugs was admitted as establishing a motive for the burglary which resulted in the murder. *Webb* in turn relied upon *Johnson* for the "motive is always relevant" premise even though *Johnson* cited no authority for the proposition. Thus, the cases seem to utilize the terms motive and intent somewhat loosely. It is clear, however, that where, as is most generally the case, intent is an element of the offense, the State must establish that element beyond a reasonable doubt. It is not necessary for the prosecution to offer evidence of motive, although it may do so. 1 WHARTON'S CRIMINAL LAW § 89 (15th Ed.1993).

In any event, whether Moore's previous conviction was offered to show motive, intent, purpose, identity, *modus operandi* or preconceived plan, we must conclude, after examining the law in conjunction with the evidence presented, that the introduction of the prior conviction is inconsistent with the State's enumerated purposes.

Initially, we agree with Moore's contention that no issue as to his identity existed in the present case, by which the State could introduce evidence that he used a similar *modus operandi* to commit the L.M. assault. Indeed, Moore was apprehended at the scene, and the State, in attempting to introduce the evidence, agreed that his identity was not at issue. A.L.'s testimony was not admissible to establish identity. *See Street v. State* (1991) 5th Dist.Ind.App., 567 N.E.2d 1180, 1185, *trans. denied* (extrinsic offense testimony is not relevant where dispute was whether crime occurred, rather than identity of

---

testimony been admitted under any of those exceptions, we would reach an identical conclusion.

7. *See also* Record at 765.

perpetrator); *see also Schumpert, supra,* 603 N.E.2d at 1362 (where identity is established by other means, court should exercise its discretion against admission of prior crimes evidence).

■ Likewise, the disputed testimony cannot be construed to prove that Moore possessed a preconceived plan which included an assault upon L.M. In order that a defendant possessed a preconceived plan to commit an offense, that plan " 'must . . . be so related in character, time, and place of commission as to establish some plan which embraced both the prior and subsequent criminal activity and the charged crime.' " *Hardin, supra,* 611 N.E.2d at 129 (quoting *Malone v. State* (1982) Ind., 441 N.E.2d 1339, 1347). The preconceived plan exception has been further limited by *Lannan, supra,* 600 N.E.2d at 1340, which required that the crimes constitute an " *'uninterrupted transaction.'* " *See Hardin, supra* at 130.

In *Street, supra,* 567 N.E.2d at 1184, the court enumerated a different incarnation of the common scheme or plan exception which focused not upon identify but rather upon several possible factors. The *Street* court, cited *Gibbs v. State* (1989) Ind., 538 N.E.2d 937, 939, to the effect that extrinsic offenses may be admitted to prove "intent, motive, purpose, or identity by showing the defendant committed other offenses with a similar *modus operandi.*" The court in *Street* proposed a more complex analysis: "extrinsic offense evidence introduced to show state of mind, that is, intent, motive, or purpose," does not have to show distinctive characteristics which would constitute a "signature" crime under the identity branch, but must only demonstrate some similarity in order to be admissible. 567 N.E.2d at 1184. To the extent that *Street,* a Court of Appeals decision, is inconsistent with *Hardin,* a Supreme

Court case, it must be disregarded. To the extent that *Hardin* may be construed as inconsistent with *Gibbs,* we deem *Hardin* controlling because it is the later pronouncement.[8]

By no stretch of the imagination could the evidence of Moore's conviction have been admitted as evidence of a preconceived plan which included the instant offenses. An uninterrupted transaction requires that the crimes be committed in conjunction with each other; here, eleven months separated the incidents and we note as well that the events took place in separate counties. Thus, the evidence was not admissible to prove identity or to establish a common scheme or plan.

■ Because intent was specifically enumerated as a purpose for which the State introduced A.L.'s testimony,[9] we must determine whether it was properly admitted for that purpose. In order for evidence of previous crimes to be introduced for purposes of showing that an accused possessed the requisite intent to commit the instant crime, he must specifically place his intent at issue: "The intent exception in Evid.R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent." *Wickizer v. State* (1993) Ind., 626 N.E.2d 795, 799. That an accused presents a defense which denies commission of an act in its entirety will not suffice; in order that intent is affirmatively presented as an issue, an accused must in effect admit to the commission of the act, but profess that he acted with some intent contrary to that required by the statute under which he is charged. *See Fisher v. State* (1994) 2d Dist. Ind.App., 641 N.E.2d 105, 108.

In his defense, Moore introduced a police statement taken shortly after the incident. It contained his statements that he and L.M.

---

8. The "some similarity" test drawn from a *Gibbs–Street* type analysis has been criticized as a "spurious plan" doctrine. Edward J. Imwinkelried, Uncharged Misconduct Evidence § 3:23 (1994). This commentator observes that the doctrine allows evidence which does not have sufficient similarity to meet the *modus operandi* requirement and concludes that in reality "the courts are permitting the proponent to introduce propensity evidence in violation of the prohibi-

tion in the first sentence of Rule 404(b)." *Id.* (Footnote omitted).

9. We address the intent issue even though it is not encompassed within the common scheme or plan exception under which A.L.'s testimony was admitted, because the exception is a proper purpose for admission of evidence of previous crimes wrongs or acts as per the enumerated language of Evid.R. 404(b).

had met at a phone booth in front of a roller rink, that she had invited him to her home, and that he followed her for that purpose. He stated that he and L.M. had both stopped along the road in order to converse, that she revoked her earlier invitation, but that she had voluntarily followed him to his car in order to further discuss the issue. Moore stated that they had begun to kiss when L.M. suddenly picked up a hammer and attempted to hit him. Here, Moore explicitly and unequivocally denied that he had forced her into his car, that he had hurt her in any way, or that he had attempted to force her to perform fellatio upon him.

■ In order to possess the requisite intent to commit attempted criminal deviate conduct, a defendant must knowingly or intentionally engage in conduct which is a substantial step toward causing another person to perform or submit to deviate sexual conduct. I.C. 35–42–4–2. At no point did Moore admit that he engaged in the acts alleged, but that in doing so he possessed an inimical intent to that required; instead, he denied that the acts had ever occurred.[10] Under these circumstances, and in light of the fact that *Wickizer* requires our narrow construction of the intent exception, Moore's complete denial that he attempted to force L.M. to perform any act, let alone one defined as criminal sexual deviate conduct, did not amount to a specific contrary intent. 626 N.E.2d at 799. The evidence here admitted, that Moore had been convicted of rape, cannot purport to fit within the confines of that exception. Thus, the intent exception does not apply to allow admission of A.L.'s testimony.

■ While the previous rape may have been committed similarly, if not identically, to the present incident, we find the court's astute observation in *Fisher, supra,* apropos to our discussion: "Minimal connection with a proper purpose for admitting the previous sexual misconduct does not alone make the evidence admissible." 641 N.E.2d at 108.

Similarity, in and of itself, will not suffice to render evidence admissible under the common scheme or plan exception to Evid.R. 404(b). Instead, the proffered evidence must be genuinely relevant to a proper purpose contained within the rule. *See Wickizer, supra,* 626 N.E.2d 795.

■ As Moore has demonstrated that A.L.'s testimony fits within neither branch of the common scheme or plan exception to Evid.R. 404(b), nor within the identity exception to the rule, we are left with the conclusion that it constituted impermissible character evidence which was introduced for the purpose of showing that Moore acted in conformity with a particular trait. That this is the case, however, does not end our inquiry. We are as yet obligated to determine whether the erroneously admitted evidence requires reversal because it "appears inconsistent with substantial justice or affects [Moore's] substantial rights[.]" *Wickizer, supra,* 626 N.E.2d at 800; *see also Hardin, supra,* 611 N.E.2d at 132.

The record reveals that there were no witnesses to the incident other than Moore and L.M. Thus, the trial essentially boiled down to a credibility contest—L.M.'s version of the events versus Moore's version. Indeed, the only independent evidence which existed would have tended to support Moore's version of the events, rather than L.M.'s. William Cowart testified that, near midnight, he had seen Moore's car parked in front of the roller rink while Moore walked away from the pay phone. Although L.M. testified that she made no stops on her way home, Cowart observed a 1985 red Sunbird parked just behind Moore's car. He testified at trial that the car was identical to one belonging to L.M. From this evidence, the jury could have inferred that Moore and L.M. had conversed prior to their meeting on the shoulder of State Route 32. Had Moore's previous rape conviction been properly excluded, such evidence might have placed L.M.'s testimony in a different light.

---

**10.** This case is very unlike *Butcher v. State* (1994) 1st Dist.Ind.App., 627 N.E.2d 855, *reh'g denied,* which offers an excellent example of a case in which the court found the defendant to have specifically placed his intent at issue by asserting one contrary to that required for conviction under the statute. There, the defendant did not deny that he had touched his daughter; instead, he asserted that he " 'couldn't resist,' " or was forced, against his will, to touch her. *Id.* at 858.

Additionally, the record reveals that Moore was forced to spend considerable time defending the facts underlying that rape conviction [11]—so much so that retrial of the criminal deviate conduct charge largely amounted to a second trial upon the rape of A.L. Not only did he extensively cross examine the witness concerning the identity of her attacker, but Moore also elicited testimony from the police who investigated that crime, and from his ex-wife and girlfriend, both of whom served as alibi witnesses in that trial. Indeed, the record manifests the precise danger our Supreme Court wished to guard against in *Hardin, supra:*

> "The rationale for this rule is predicated upon our fundamental precept that every defendant should only be required to defend against the specific charges filed. In instances where evidence of prior uncharged misconduct is admitted at trial, a defendant would be forced to refute these allegations as well as defend against the crime specifically charged. If a court were to indiscriminately admit proof of criminal activity beyond that specifically charged, then the burden on the defense would be intolerably enlarged and the court would effectively negate the due process presumption of innocence that our system of justice accords to every accused." 611 N.E.2d at 127–28 (citing *Malone, supra,* 441 N.E.2d at 1345–46).

In light of the foregoing facts, we are persuaded that introduction of Moore's rape conviction very probably had substantial impact upon the jury's verdict.

Although we find that the trial court committed reversible error when it allowed the jury to hear evidence of A.L.'s rape, we necessarily address Moore's additional contentions: that he was not subject to retrial upon the attempted criminal deviate conduct charge, that the trial court erred in its refusal to vacate Moore's confinement conviction after he had been convicted of the greater offense of attempted criminal deviate conduct, and that the trial court erred in imposing a sentence upon the attempted criminal deviate conduct charge to run consecutive to the confinement charge.

## II. RETRIAL AND DOUBLE JEOPARDY

Because we cannot negate the possibility that Moore will be retried again, we necessarily address Moore's challenge to the propriety of the second trial itself. His argument hinges upon the claim that both I.C. 35–41–4–3(a) (Burns Code Ed.Repl.1994) and principles of double jeopardy barred the second trial in its entirety because Moore's previous conviction and sentence for the lesser included offense of confinement still stood. Since the confinement conviction was based upon the same factual circumstances and was included in attempted criminal deviate conduct *as charged,* he claims that any retrial of the deviate conduct charge would subject him to multiple trials upon, and punishment for, the same act.

The Double Jeopardy Clause of the Fifth Amendment to the federal Constitution bars more than one punishment for the same offense. *Warner v. State* (1991) Ind., 579 N.E.2d 1307, 1311. However, the retrial of a defendant upon a charge is not necessarily a "punishment." Indeed, once a court has vacated the conviction of an accused to grant a new trial, that person is placed in a position as if he had never been tried upon that charge at all. *See Causey v. State* (1971) 256 Ind. 19, 266 N.E.2d 795, 797. In such situation, retrial is permissible. *See Hastings v. State* (1990) 1st Dist.Ind.App., 560 N.E.2d 664, *trans. denied.* It is only where a conviction has been premised upon the insufficiency of the evidence that retrial is barred. *Warner, supra* at 1311.

Moore relies heavily upon *Buie v. State* (1994) Ind., 633 N.E.2d 250, *reh'g denied,* for the proposition that, since both convictions arose from the same factual circumstance and, having been convicted of the lesser included offense, he cannot be retried for the greater offense of attempted criminal deviate conduct. However, his reliance is misplaced. Buie was convicted of both Murder and Conspiracy to Commit Murder. The court held that "where the overt act element of a conspiracy charge is the underlying offense, and

---

**11.** Specifically, the record reveals that A.L. could not identify Moore as her attacker.

where the State has obtained a conviction for Conspiracy based on the commission of the underlying offense as the overt act, the State may not subsequently pursue a prosecution for the underlying offense." 633 N.E.2d at 261. *Buie,* therefore, stands for the proposition that one may not be subsequently prosecuted for an offense which was included in an earlier conviction. *Buie* does not address whether a greater offense may be reprosecuted after a reversal when a conviction upon an included offense remains in place. This was the precise reason why, in our decision upon rehearing, we stated that in the event of a new conviction upon the attempted criminal deviate conduct charge, the included confinement conviction must be vacated.

■ Here, no evidentiary deficiency existed. Thus, once Moore's conviction of attempted criminal deviate conduct had been overturned by this court as one contrary to law, though not lacking in evidence, he was subject to retrial upon that charge alone at the behest of the State. Indeed, that Moore's conviction of confinement remained standing after appeal does not offend the principles of double jeopardy. It was only after the attempted criminal deviate conduct conviction that valid double jeopardy concerns would have surfaced; it was only at that point that the possibility existed that Moore was subject to multiple punishments arising from a single course of conduct.

■ In addressing that possibility, we reiterate our previous assessment. If Moore is convicted upon retrial of attempted criminal deviate conduct, as charged, the confinement conviction merges to become a lesser included offense. It is clear that, as the offenses are charged, the confinement served only as the means by which Moore attempted to commit the deviate conduct. *See McDonald v. State* (1987) Ind., 511 N.E.2d 1066, 1069 (trial court did not commit sentencing error where attempted battery conviction was subsumed by confinement conviction). Should both convictions stand, Moore would, indeed, be subject to multiple punishment for the same occurrence.

Though Moore's argument centers upon his concerns that he has been subjected to multiple punishments for a single act, he also argues that the remaining confinement conviction affected his conviction of attempted criminal deviate conduct in another manner. Specifically, Moore maintains that, since his confinement conviction remained standing, counsel was effectively precluded from requesting that the jury be instructed upon the lesser offense of confinement, which was factually included within the charge. Appellant's Brief at 10 n. 1. He suggests that his conviction of attempted criminal deviate conduct is therefore inherently flawed.

■ We cannot agree with Moore's argument that it would have been improper for counsel to request the instruction on confinement as a lesser included offense. Indeed, such a request for an instruction would have been the only method by which to preserve an error like that alleged. *See Nehi Beverage Co. v. Petri* (1989) 4th Dist.Ind.App., 537 N.E.2d 78, 82, *trans. denied* (error in the giving or refusal of instructions must be preserved by objection at trial). Since, by Moore's argument, we assume that such a request is nonexistent, we find the issue to be without merit.

Finally, the sentencing issue Moore presents is essentially a non-issue, because we hereby reverse Moore's conviction of attempted criminal deviate conduct, and its concomitant sentence. Further, the issue could not arise after retrial, because, as noted, convictions upon both the confinement and the lesser included offense of attempted criminal deviate conduct would subject Moore to multiple punishment for the same act, and would violate prohibitions against double jeopardy. As this is the case, the possibility does not exist that two sentences will be imposed after a third trial, or that either sentence will run consecutive to the other.

Accordingly, Moore's conviction for attempted criminal deviate conduct is reversed and ordered vacated; and, while his conviction for confinement as yet stands, this will remain so only if it does not merge with a subsequent conviction upon further proceedings.

KIRSCH, J., concurs.

HOFFMAN, J., dissents with separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. The threshold question is whether Moore's second prosecution for criminal deviate conduct was barred by the principles of double jeopardy. IND. CODE § 35–41–4–3 (1982 Ed.) provides in pertinent part:

"(a) A prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if:

(1) the former prosecution resulted in an acquittal or a conviction of the defendant (A conviction of an included offense constitutes an acquittal of the greater offense, even if the conviction is subsequently set aside.)."

Once this Court affirmed Moore's conviction for the factually included lesser offense of confinement, that action constituted acquittal of the greater offense. *See Schiro v. State* (1989), Ind., 533 N.E.2d 1201, 1207 (fundamental double jeopardy rule that conviction of lesser included offense constitutes acquittal of greater offense); *cf. Buie v. State* (1994), Ind., 633 N.E.2d 250, 261 (where underlying offense constitutes overt act element of conspiracy charge, conviction for conspiracy based on commission of underlying offense as overt act bars subsequent prosecution for underlying offense). Had this Court reversed and remanded for a trial as to all matters, the finding that sufficient evidence was presented for conviction would have allowed retrial on the greater charge as well as any appropriate lesser offenses.

Further, I disagree with the majority's analysis of the propriety of admitting evidence of an unrelated crime pursuant to Ind. Evidence Rule 404(b) which was adopted in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334. The State requested admission of the testimony by the victim of the rape for which Moore was convicted to "show purpose, mo-

tive, [and] intent on the part of" Moore. Accordingly, the analysis must center on the propriety of admitting the evidence for the reasons set forth by the proponent of the evidence.[12]

In *Wickizer v. State* (1993), Ind., 626 N.E.2d 795, the court explained that:

"The intent exception in Evid.R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. When a defendant alleges in trial a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief, the State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense. The trial court must then determine whether to admit or exclude such evidence depending upon whether 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.'"

*Id.* at 799. In the present case, Moore placed his intent at issue in his opening statement. Moore contended that the victim invited him to follow her to a party, that he flashed his lights to notify her that he was lost, that she entered his car voluntarily and that she then initiated an attack upon him. Evidence that Moore was convicted of rape under substantially the same circumstances directly refuted Moore's contention regarding his intent in the present case.

Under *Wickizer*, the trial court acted within its discretion in determining that the probative value of the evidence of the unrelated crime substantially outweighed the danger of unfair prejudice once Moore placed his intent at issue. Although I believe that the second trial of Moore for attempted criminal deviate conduct violated double jeopardy, the admis-

---

**12.** Further, I disagree with footnote 6 in the majority opinion that proof of motive, intent, and purpose are subsumed into the common scheme or plan exception. *See Lannan,* 600 N.E.2d at 1339 n. 11 (404(b) consistent with Indiana's rule that evidence of criminal activity admissible to "prove intent, purpose, motive, identity, or common scheme or plan".

sion of evidence of the unrelated crime was not error.

I would vote to reverse the conviction on double jeopardy grounds.